UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL MEHRENS,

   Plaintiff,

v.

                File No. 2:11-CV-467

                HON. ROBERT HOLMES BELL

UPPER PENINSULA PLUMBERS' AND
PIPEFITTERS' PENSION FUND and
BOARD OF TRUSTEES OF THE UPPER
PENINSULA PLUMBERS' AND
PIPEFITTERS' PENSION FUND,

   Defendants.

                 /

## **O P I N I O N**

   Plaintiff Michael Mehrens brought suit against Defendants Upper Peninsula Plumbers' and Pipefitters' Pension Fund (the "Pension Fund") and Board of Trustees of Upper Peninsula Plumbers' and Pipefitters' Pension Fund (the "Board") on November 23, 2011, alleging four counts pursuant to the Employee Retirement Income Security Act ("ERISA"): (1) a claim for benefits pursuant to 29 U.S.C.§ 1132(a)(1)(B); (2) estoppel; (3) failure to provide requested documents as required under § 1132(c); and (4) attorney fees pursuant to § 1132(g).  (Dkt. No. 1.)  On August 2, 2012, the parties stipulated to the dismissal of Count 3 (Dkt. Nos. 30-31), and on October 22, 2012, this Court dismissed Count 2 (Dkt. Nos. 35-36).  Presently before the Court is Plaintiff's motion for judgment on the administrative record.  (Dkt. No. 44.)

**I.**

The Pension Plan provides that "[a] Participant who retires on or after July 1, 1998, and whose age plus Years of Service equals or exceeds 85, shall be eligible for Index 85 unreduced Early Retirement Benefit." (Dkt. No. 14, Ex. C, Pension Plan, Art. V, § 5.04.) Mehrens, a former trustee of the Pension Fund from 2008 until 2010, is seeking the inclusion of his employment from 1978 to 1981 in his "Years of Service" in order to establish eligibility for Index 85 benefits. "Years of Service" includes both covered employment (i.e., plumbing, pipefitting, and other employment covered by a collective bargaining agreement) and contiguous, non-covered employment. (*Id.* at Art. II, § 2.02.) Without the benefit of those years, Mehrens' age plus Years of Service at the time of his "Request for Application" for early retirement benefits in 2009 was 81 (55 years of age plus 26 years of service). Due to a plan amendment, August 1, 2009, was the last day on which Plaintiff could qualify for Index 85 benefits. (Dkt. No. 15, Ex. F, at PageID# 252.)

**1. First Appeal**

On April 30, 2008, Plaintiff requested "additional service years toward my pension." (Dkt. No. 16, Ex. I, at PageID# 413.) To support this request, Plaintiff provided pay stubs from his time working at Dickinson Homes from 1978-1981. During this first appeal, the Board provided contradictory responses as to whether Plaintiff was entitled to count his 1978-1981 employment towards Index 85 eligibility.

First, in May 2009, the Board, according to its minutes, granted Plaintiff two

additional years of contiguous service for Plan Years 1980 and 1981,[1] but reserved judgment on the matter of Plaintiff's eligibility for Index 85 benefits. (Dkt. No, 21, Errata Ex. T, at PageID# 815.)

Next, Plaintiff received a letter in June 2009, which stated that Plaintiff was approved for *four* years of contiguous service for the Plan Years 1978-1981 and *was eligible* for Index 85 benefits. (Dkt. No. 16, Ex. M, at PageID# 421-22.)

Third, according to the minutes of an August 2009 meeting, the Board changed its mind again, and decided that Mehrens' additional years of contiguous service would *not* be applicable towards Index 85 benefits, with one member noting that crediting such years for Index 85 did not make sense "in comparison of the long-term financial solvency of the Plan." (Dkt. No. 21, Errata Ex. T, at PageID# 817-18.)[2]

On August 28, 2009, Plaintiff completed his Request for Application for early retirement benefits. (Dkt. No. 16, Ex. L, at PageID# 414.) In response to this application, Plaintiff received a fourth contradictory response. A September 30, 2009, letter from the Board notified Plaintiff that he was only approved for *two* years of contiguous service and not four. (Dkt. No. 16, Ex. M, at PageID# 429-30.) Notably, this letter indicated that Plaintiff's additional years of contiguous service *would* count towards Index 85 benefits, and

---

[1]The Board claimed that it only had check stubs for the periods beginning in November 1979 at this time. Plaintiff argues that the Board had all of his check stubs from 1978 to 1981.

[2]If the desire to protect Plan assets truly motivated the Board's decision it would constitute a breach of the Board's fiduciary duties. *See* 29 U.S.C. § 1104(a).

stated that Plaintiff's combined age and Years of Service with the additional two years was one year short of 85. This letter asked for additional information in order to add another year of contiguous service.

Last, according to the minutes of a December 2009 Board meeting, Plaintiff was provided with a *fifth* contradictory response. The Board, upon reviewing additional pay records, determined that Plaintiff was eligible for two more years of contiguous service for Plan Years 1978 and 1979. (Dkt. No. 21, Errata Ex. T, at PageID# 820.) While according to the September 2009 letter this should have qualified Plaintiff for Index 85 benefits because of the four total additional years, the Board returned to the decision it made at the August 2009 meeting, and decided that Mehrens' four additional years of contiguous service would *not* apply towards Index 85 benefits because they were recognized after 2002. Thus, Plaintiff's first appeal for recognition of the Plan Years 1978-1981 towards an Index 85 pension was officially denied. (*Id.*) The Board told Plaintiff that he could re-appeal and argue that the 1978-1981 employment should count as *covered* employment as opposed to contiguous, non-covered employment. (*Id.*)

**2. Second Appeal**

Plaintiff re-appealed as suggested. On February 9, 2010, the Board denied Plaintiff's appeal, asserting that there was no collective bargaining agreement ("CBA") for Dickinson Homes covering Plaintiff's work, Plaintiff's job classification at Dickinson Homes was not covered service, Plaintiff was not in a covered class of employees, and there was a break in

4

Plaintiff's service in 1983. (Dkt. No. 16, Ex. N, at PageID# 454.)

### 3. Third Appeal

Plaintiff obtained representation and again sought recognition of his employment as covered service, this time providing evidence that contributions were made by Dickinson Homes on behalf of another employee (indicating there was a CBA for Dickinson Homes) and that contributions that should have been paid on behalf of Plaintiff were mistakenly paid to Plaintiff as wages. (Dkt. No. 16, Ex. N, at PageID# 455-57.) On June 11, 2010, this appeal was denied because (1) first year apprentices do not receive pension benefits, (2) while there may have been a CBA covering the other employee's work, there was no CBA that covered Plaintiff's work with Dickinson Homes, (3) Plaintiff did not receive any pension contributions as wages, and (4) there was a break in service in 1983. (Dkt. No. 16, Ex. N, at PageID# 459.) Additionally, the Board noted that the absence of contributions in the years for which credit was sought corroborated its conclusion that those years were not intended to be counted for pension benefits. (*Id.*) Six months later, Plaintiff either voluntarily resigned his position as a Trustee because of the potential conflict of interest or was forced to resign. (Dkt. No. 45, at PageID# 1054; Dkt. No. 47, at PageID# 1088.)

### 4. Fourth Appeal

Plaintiff appealed for a fourth time, raising a combination of arguments previously presented and arguing that the failure to collect contributions could not provide the basis for rejecting his claim. (Dkt. No. 17, Ex. P, at PageID# 601-04.) The Board denied this appeal,

5

this time asserting that Petitioner was not a plumbing apprentice at Dickinson Homes from 1978-1981. (Dkt. No. 22, Errata Ex. T, at PageID# 838.) Notably, the Board did concede that contrary to its earlier decision first year apprentices were entitled to full benefits. (*Id.*) A letter confirming this decision was sent on October 13, 2011. (Dkt. No. 17, Ex. S, at PageID# 729-30.)

Throughout the appeal process and this litigation Plaintiff has continued to work in covered employment.

## II.

In an action challenging the denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), a plan administrator's decision is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan contains a clear grant of discretion to the administrator to determine benefits or interpret the plan, the plan administrator's decision to deny benefits is reviewed under the highly deferential arbitrary and capricious standard of review. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). While the grant of discretionary authority must be clear, "[t]he Court in *Firestone* surely did not suggest that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.'" *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 n.2 (6th Cir. 1992) (quoting *Block v. Pitney Bowes Inc.*, 952 F.2d

6

1450, 1453 (D.C. Cir. 1992)).

Plaintiff argues that the Court should apply the *de novo* standard of review, while Defendants push for arbitrary and capricious. Part of Defendants' argument relies on wording in the Amended and Restated Agreement and Declaration of Trust Upper Peninsula Plumbers and Pipefitters' Pension Fund (As Amended and Restated as of September 1, 1982) ("Declaration of Trust") (Dkt. No. 14, Ex. A, at PageID# 71-96), which Defendants contend is a plan document that must be considered by this Court. Plaintiff counters that this document may not be considered because it was never produced prior to the filing of this litigation. The Court is concerned by this failure to disclose. In a letter dated October 8, 2010, Plaintiff's counsel requested "all Collective Bargaining Agreements in effect from April, 1978 to the present, all plan documents in effect from April 1978 to the present" and all documents relating to Dickinson Homes. (Dkt. No. 16, Ex. N, at Page ID# 460-61.) Despite this broad request, Defendants did not include the Declaration of Trust when providing plan documents in response to the letter.[3] (Dkt. No. 16, Ex. O, at PageID# 471.) When a party requests "all" plan documents, it is disingenuous to argue in litigation, as Defendants do, that in providing "all" plan documents they did not include a specific plan document (i.e., the Declaration of Trust) because Plaintiff was a trustee and the regular practice of the Fund was to provide all plan documents to each trustee. (Dkt. No. 47, at PageID# 1091.)

---

[3] Nor did the Board disclose any documents relating to Dickinson Homes or Robert Person.

Nevertheless, even if this Court does not consider the wording in the Declaration of Trust,[4] there is a clear grant of discretionary authority in the Pension Plan itself and the arbitrary and capricious standard of review is warranted based on that grant of discretion alone.

The Pension Plan contains the same key provisions as the plan in *Johnson v. Eaton Corp.*, 970 F.2d 1569 (6th Cir. 1992), which the Sixth Circuit found sufficient to constitute a grant of discretionary authority. The *Johnson* plan contained the following provisions:

- The Committee "shall have all such powers and authority as may be necessary to carry out the provisions of this Plan . . . ."

- The Committee shall "establish rules for the administration of this Plan . . . and determine the application of such rules."

---

[4]The Declaration of Trust provides as follows:

There is hereby created a Trust Fund known as "UPPER PENINSULA PLUMBERS' AND PIPEFITTERS' PENSION FUND." The Fund hereby constitutes an irrevocable Trust for the purposes set forth herein and **is to be managed in the sole discretion of the Trustees**, subject to the limitations contained herein, and all applicable Federal, State and Local Laws.

(Decl. of Trust, Art. II, § 1 (emphasis added).) The Trust further provides that "[a]ny questions arising in connection with the administration of this Agreement and Declaration of Trust, not herein specifically provided for, shall be left to the discretion of the Trustees." (*Id.*, Art. VII, § 4.) On its own, this constitutes a grant of discretionary authority meriting the use of the arbitrary and capricious standard. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) ("We apply the arbitrary and capricious standard of review in this case because the SADB Plan expressly grants the Ameritech Employees' Benefit Committee 'full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.'"); *Shelby Cty. Health Care Corp.*, 203 F.3d at 933 ("The Plan states, 'This Board has the primary responsibility for decisions regarding eligibility rules, type of benefits, administrative policies, management of Plan assets, and interpretation of Plan provisions.' The parties agree that this language expressly gives the Board of Trustees the authority to interpret the Plan.") (internal citation omitted).

- The Committee's decision "shall constitute the final disposition under [the] Plan" of the claimant's case.

*Id.* at 1571-72.[5] The Sixth Circuit explained in detail why these provisions constituted a clear granting of discretionary authority to determine eligibility for benefits and to construe the terms of the plan:

> A survey of pension plan provisions at issue in other cases reveals that, while the question is close, the [] plan does endow the committee with authority to determine eligibility for benefits within the meaning of *Firestone*. To be sure, the declaration of discretionary authority is not as ringing as it was in *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 984 (6th Cir.1991) (plan stated that "disability" would be "determined on the basis of medical evidence satisfactory to the insurer"), nor as in *Bowman v. Firestone Tire & Rubber Co.*, 724 F.Supp. 493, 500 (N.D. Ohio 1989) ("Interpretation and application of this policy to a particular circumstance shall be made by Firestone"). On the other hand, the plan is not so devoid of discretion-granting language as its counterpart appeared to be in *Ampco-Pittsburgh*, 876 F.2d at 550, which provided that eligibility for termination pay would be automatic upon the occurrence of a particular event. Further, while there is some support for the view that the grant of "authority to control and manage the operation and administration of the Plan" is not sufficient to insulate the case from *de novo* review, *Michael Reese Hosp. v. Solo Cup Employee Health Benefit Plan*, 899 F.2d 639, 641 (7th Cir.1990), other courts opting for the deferential standard have found significant, among other things, the type of rule-making authority granted here.
>
> The provisions regarding the administrative and rule-making authority are not the final word, however, on the [] committee's powers. That committee is also empowered to review the denial of claims, and its decision "shall constitute the final disposition under [the] Plan" of the claimant's case. Therefore, while the

---

[5]Plaintiff attempts to distinguish *Johnson* on the ground that the pension plan here is a multi-employer plan controlled by CBAs. Because two Trustees are appointed by the union and two by the employers, Plaintiff notes that to use the rule making power at least one trustee would have to "cross over" and "vote with an adversary." (Reply Br. 6.) The Court fails to see the relevance of this argument.

9

committee is not the first arbiter of a claimant's eligibility, the Eaton plan makes it the final one. In order to exercise this final authority, the committee members must certainly have been entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility provisions. *Compare Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 119 n. 5 (3d Cir.1990). Otherwise, the committee's review would be meaningless.

*Id.*

This holding in *Johnson* is consistent with *Davis v. Kentucky Financial Cos. Retirement Plan*, 887 F.2d 689 (6th Cir. 1989). In *Davis*, the Sixth Circuit was confronted with the following plan provision: "The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan. All such determinations shall be final, conclusive and binding . . . ." 887 F.2d at 694. *Davis* held that "[t]his section makes clear that the plan administrator is given great discretion to interpret the language of the plan." *Id.*

The Pension Plan at issue here contains the same key provisions as the plans in *Johnson* and *Davis*. First, the Trustees are empowered with broad rule-making authority[6]: "The Trustees shall make such rules and prescribe such procedures for the administration of the Plan as they shall deem necessary and reasonable." (Pension Plan, Art. XIII, § 13.01.) Second, the Trustees are entrusted with final authority as to *any* matter pertaining to the Plan: "[T]he decisions of the Trustees in all matters pertaining to the administration of the Plan shall be final." (*Id.*)

---

[6]Rule-making authority, on its own, is likely insufficient to constitute a grant of discretionary authority. *See Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373-74 (6th Cir. 1994).

10

There is also an additional grant of authority in this case which goes beyond the provisions discussed in *Johnson* and *Davis* and further supports a finding that clear discretionary authority has been granted. The Pension Plan grants the Trustees sole responsibility to make claim determinations: "The Plan shall be administered solely by the Trustees and employees or agents of the Trustees acting for them as authorized . . . . The Trustees shall make all determinations as to the right of any person to a benefit." (Pension Plan, Art. XIII, §§ 13.01-02.) Taken together, these Pension Plan provisions oblige the Court to echo the holding in *Jackson* that in order to be entrusted with such broad rule-making authority, final authority, and (in this case) sole responsibility for claim determinations, the Trustees "must certainly have been entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility provisions." *Johnson*, 970 F.2d at 1572. Thus, the Court will apply the arbitrary and capricious standard.

### III.

Under the arbitrary and capricious standard, the Court "will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). "A decision is not arbitrary or capricious if it 'is rational in light of the plan's provisions.'" *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).

The Board determined that Plaintiff's employment at Dickinson Homes from March of 1978 through December of 1981 was neither covered service nor contiguous, non-covered service. While both possibilities are argued by the parties, the Court finds it unnecessary to address the question of contiguous service because it finds that the Board's determination that Plaintiff's service was not covered employment was irrational and not supported by substantial evidence.[7]

A Year of Service for covered employment is calculated according to the hours of work performed:

> Beginning July 1, 1976, a Year of Service shall mean a Plan Year during which a Participant has at least four hundred (400) Hours of Work [i.e., work covered by a CBA] for an Employer [i.e., an employer bound by a CBA with the union] . . . whether or not such a Participant was a member of the Union.

---

[7]While the Court is not addressing the issue of contiguous service, it notes that the Board's claim that only years of contiguous service *recognized* as of November 1, 2002 could be credited toward Index 85, is not supported by the August 30, 2002, notice of plan amendment and the June 2003 summary of material modifications. (Dkt. No. 14, Ex. E, PageID# 242; Dkt. No. 16, Ex. M, PageID# 441.) Those documents stated only that "Years of Contiguous Service *as of* November 1, 2002" would count for Index 85. (*Id.*) This phrase plainly means that Years of Contiguous Service which *occurred* prior to November 1, 2002, would be counted, and to read-in an additional recognition requirement to this language would be irrational.

In any case, the Plan only provides two ways in which non-covered employment may be recognized as contiguous. First, if an employee was employed in non-covered employment and then became a Plan participant while working for the *same* employer. (Pension Plan, Art. II, § 2.02.) Second, if a Plan participant is working in covered employment and then becomes employed in non-covered employment for the *same* employer immediately after. (*Id.*) Thus, according to the Plan, if Plaintiff's employment at Dickinson Homes was *not* covered, it would also not be contiguous because in that case Plaintiff's first covered employment began with a *different* employer. Thus, the Board's argument that service recognized after 2002 as contiguous cannot be credited towards Index 85 is not only irrational but also completely unnecessary because Plaintiff's 1978-1981 service cannot be recognized as contiguous at all.

(Pension Plan, Art. II, § 2.02.)  There is no dispute that Plaintiff performed the requisite 400 hours of work each year from 1978 to 1981.  The issue is whether the work Plaintiff performed was plumbing (i.e., covered work) and whether Dickinson Homes was bound by a CBA (i.e., a covered employer).

Both parties agree that work as a plumbing apprentice constitutes covered employment.  However, while Plaintiff alleges that he worked for Dickinson Homes as a plumbing apprentice during the four years at issue, the Board disagreed.  This determination is irrational and unsupported by substantial evidence.

Plaintiff provided pay stubs proving that he was employed by Dickinson Homes from 1978-1981.  (Dkt. No. 17, Ex. R, at PageID# 648-673.)  Additionally, Plaintiff provided (1) an affidavit, in which he swore that he worked as an apprentice plumber at Dickinson Homes from 1978 until 1981, and (2) a State of Michigan Registration for Plumber's Apprentice for an apprenticeship at Dickinson Homes beginning on April 20, 1978, which was signed by the plumber Robert Person, Plaintiff's alleged instructor at Dickinson Homes.  (Dkt. No. 17, Ex. Q.)  That form stated "My apprenticeship is devoted <u>entirely</u> to plumbing."  (*Id.*)

Despite this evidence, the Board concluded that Plaintiff was not an apprentice at Dickinson Homes.  The Board's justification for its decision is two contemporaneous documents signed by Plaintiff in 1981 and 1982, in which Plaintiff did not disclose his employment at Dickinson Homes.[8]  However, the Board's reliance on these forms was

---

[8]At least, this is the evidence the Board now claims it relied upon.  As Plaintiff points out in his reply brief, the Board, in concluding that Plaintiff was not an apprentice at Dickinson Homes during the administrative process, never pointed to these forms as their basis for that conclusion.  Instead, the Board was silent as to how it reached that conclusion.

13

indisputably irrational. Both forms sought information regarding Plaintiff's *pipefitter* experience, and Plaintiff's apprenticeship at Dickinson Homes was "devoted entirely to plumbing."

The first document, a union apprentice application signed on February 26, 1982, lists only Rust Engineering Company as a prior employer and lists Plaintiff's past apprentice experience as 10 months only. (Dkt. No. 15, Ex. H, at PageID# 304.) But the document explicitly asked for Plaintiff's experience as a *pipefitter* only. (*Id.*) The second document, a Michigan Apprenticeship Agreement signed on March 18, 1981, states that Plaintiff's apprenticeship with Iron Mountain Plumbers/Pipefitters JAC began on April 7, 1981, and that Plaintiff would not receive credit for any prior experience. (*Id.* at PageID# 305.) Again, this document is irrelevant because "Credit for Previous Experience: None" was listed under the "Training Data" header for "Trade: Pipefitter." (*Id.*) There was no rational reason for Plaintiff to list his plumbing experience at Dickinson Homes on these two forms which asked about experience in *pipefitting*, and thus his failure to do so cannot constitute evidence that he was not a plumbing apprentice from 1978-1981.

Thus, the Board chose to ignore the state apprentice form directly stating that Plaintiff was a plumbing apprentice at Dickinson Homes, and instead relied upon apprentice forms regarding *different companies* and *a different trade*. The Court is left with the inescapable conclusion that the Board's determination that Plaintiff was not a plumbing apprentice from 1978-1981 was not supported by substantial evidence and was arbitrary and capricious.

14

As for the question of whether Dickinson Homes was a covered employer, the Board's own minutes defeat its argument to the contrary. On three separate occasions – December 2008, January 2009, and May 2009 – the Board stated that its "Records of the Fund" established that "Dickinson Homes was a signatory contractor on April 20, 1978." (Dkt. No. 21, Errata Ex. T, at PageID# 809, 811, 814.) In light of this, the Court finds the Board's subsequent claim in 2010 that it could not find any agreement between Dickinson Homes and the Fund to be disingenuous. (Dkt. No. 21, Errata Ex. T, at PageID# 824.) Defense counsel's argument as to why this change in tune might have occurred (because the Board did more investigation in 2010) is speculative and does not explain why the Board had repeatedly insisted that Dickinson Homes *was* a covered employer. Further undermining the Board's argument that Dickinson Homes was not party to any CBA, in the same 2010 meeting the Board claimed not to be able to find an agreement with Dickinson Homes, the Board admitted to accepting contributions from Dickinson Homes on behalf of Plaintiff's instructor, Robert Person. (*Id.*) No evidence has been presented to explain why Dickinson Homes would have been required to submit contributions on one employee but not another, and defense counsel's argument that *maybe* this was a special circumstance where Dickinson Homes was not a signatory to a CBA yet still had to contribute on behalf of Person is speculative.

There is substantial evidence that Plaintiff did perform plumbing work from 1978 to 1981 and that Dickinson Homes was a covered employer. Despite this evidence, and the lack

of evidence to the contrary, the Board relied on irrelevant documents and speculation to deny Plaintiff Years of Service for his 1978-1981 employment. Thus, the Court concludes that the Board's determination was arbitrary and capricious. The Court will order the Board to recognize four additional "Years of Service" for Plaintiff to account for his covered employment from 1978 to 1981, and to consider Plaintiff eligible for Index 85 benefits.

## IV.

Two additional arguments will be addressed briefly. First, Plaintiff argues that he was not provided due process by the board because it consistently changed its rationale for denying his claim. "Bias, conflicts of interest and denial of due process on the part of the Plan Administrator are relevant factors for the Court to consider in deciding whether the decision to deny Plaintiff benefits was arbitrary and capricious." *McCann v. Unum Life Ins. Co. of Am.*, 384 F. Supp. 2d 1162, 1165 (E.D. Tenn. 2003) (citing *Firestone*, 489 U.S. at 115).

While the Court sympathizes with Plaintiff's argument because the Board repeatedly changed its mind as to why it was denying Plaintiff's claims, those changed justifications could have been the result of confusion and do not necessarily mean Plaintiff was not provided with due process. Plaintiff was permitted to appeal the Board's decision multiple times and to present numerous arguments. There is no indication that Plaintiff was not provided with ample opportunity to argue his position and present evidence.

Second, Defendants argue that Plaintiff's claim is barred by the statute of limitations. They argue that a six year statute of limitation applies for an ERISA claim for benefits in Michigan and that this six year limit began running in 2004 for Plaintiff's argument that his 1978-1981 employment was covered service. Defendants point to Plaintiff's 2004 request for and receipt of a benefit estimate that did not include recognition of his 1978-1981 employment as covered service as the accrual of his cause of action. (Dkt. No. 16, Ex. K, PageID# 409-12.) This argument lacks merit. Defendants rely on *Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302 (6th Cir. 2006), which held that "when a fiduciary gives a claimant clear and unequivocal repudiation of benefits that alone is adequate to commence accrual" of the cause of action. This benefit estimate was not a clear and unequivocal repudiation of benefits to Plaintiff. Plaintiff did not apply for Index 85 benefits at that time and get rejected. Nor did he seek recognition of his service from 1978-1981 at that time. He merely sought an *estimate* of what his pension benefits would be, and the Board responded that he "may be" eligible for a Deferred Benefit based on the Board's estimate of his Years of Service and the contributions that had been remitted to the Fund. The Board never indicated that Plaintiff could never receive credit for his employment from 1978 to 1981. In fact, as evidenced by the laborious appeal process Plaintiff underwent in 2009 and 2010 and the Board's gathering of evidence during that time to determine whether the employment was covered, it *was* possible for Plaintiff to receive such credit even after the 2004 benefit estimate. Thus, a statute of limitations did not begin running in 2004.

V.

Defendants argue that if the Court grants Plaintiff the four additional Years of Service and finds him eligible for Index 85 benefits it must remand for the determination of whether Plaintiff is entitled to those Index 85 benefits retroactive as to December 1, 2009. Defendants are correct that this issue was never considered by the Board. While Plaintiff submitted a Request for Application in 2009, he never submitted an actual application for benefits. In addition, he has continued working throughout this time. Thus, the determination of the effective date for Index 85 benefits will be remanded to the Board.

The issue of whether Plaintiff is entitled to attorney fees (as requested in Count IV of the complaint) has not been briefed. If Plaintiff wishes to pursue attorney fees, he shall do so through a motion, a brief in support, and an affidavit attesting to the fees sought. If such a motion is not filed within fourteen days of the date of this order the Court shall consider Count IV of the complaint to be voluntarily dismissed and will enter judgment.

An order consistent with this opinion will be entered.


Dated: May 29, 2013                           /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE